## THE ANTILLA.

### THE PACIFIQUE.

(District Court, E. D. Virginia. September 18, 1917.)

SALVAGE ⊂⊃31—AID TO SHIP ON FIRE AT SEA—COMPENSATION.

The steamship Antilla, laden with sugar and having another steamer in tow, was on a voyage from the West Indies to New York when, at a point 126 miles south of Cape Henry, a fire started in her cargo. In answer to her wireless call for help, a revenue cutter went to her assistance, and also requested libelant, who was master of a tug to follow, which he did with the owner's consent, meeting the vessels 18 miles from the capes. The cutter had subdued the fire to some extent, and with the help of the tug the Antilla was finally towed to Norfolk and beached. During that time the fire twice broke out again, but was finally extinguished by the tug with assistance. In all, the tug spent three days and nights in active, laborious service rendering prompt and efficient aid at some risk. The Antilla and cargo were worth over $1,000,000, and the saved value was $585,000. The tug was new, worth $50,000, earning $125

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

per day, and especially equipped for fighting fire. She was ready to start with an ocean tow when called for the service. *Held*, that she was entitled to a salvage award of $9,000.

In Admiralty. Suits for salvage by John E. Scott, master of the tug Albatross, against the steamship Antilla and the steamer Pacifique. Decree for libelant for salvage in the first suit, and for towage in the second.

Hughes, Little & Seawell, of Norfolk, Va., for libelant.

Chauncey I. Clark and Burlingham, Montgomery & Beecher, all of New York City, and Hughes & Vandeventer, of Norfolk, Va., for respondents.

WADDILL, District Judge. This is a suit for salvage services rendered the Antilla and the Pacifique, during the existence of a fire on the Antilla, while she was en route from the West Indies to the port of New York, laden with sugar, and having in tow the steamer Pacifique, also bound to New York from Cuba. The Antilla was proceeding up the coast on the afternoon of Saturday, October 7, 1916, when fire broke out in her cargo on the high seas, at a distance of 126 miles south of Cape Henry. Wireless calls for assistance were sent out, and the fire raged furiously during Saturday afternoon and night and Sunday. In answer to her S. O. S. signal, late on Saturday night, the steamer Somerset came up, and took on board most of the crew of the Antilla. Early on Sunday morning the steamer Morro Castle also responded to the call. Neither one of these vessels rendered the Antilla assistance, except to take members of the crew on the Somerset, and some women members of the families of the crew of the Pacifique were transferred to the Morro Castle, and both vessels proceeded on their voyage, it having been ascertained that the revenue cutter Onandago was on her way to the Antilla. She did later arrive on Sunday evening, and, after getting the fire under control, finally brought her into port, aided by the Albatross as hereinafter mentioned.

When the message calling for assistance was received by the revenue cutter, an officer on the Onandago approached the master of the tug Albatross, which was then lying at the Norfolk & Western piers, having just arrived from the north, and due to leave the following morning, with a tow of barges for Boston, and got the tug's master to agree to go to the assistance of the Antilla. The Onandago immediately left for the burning ship, in charge of her first officer; the master, several of the officers, and part of the crew being ashore at the time. After communication with its owners, the tug left Norfolk on Monday morning, taking out the master, four officers, and eight or ten seamen of the crew of the Onandago, and proceeded to the relief of the Antilla, finding her about 1 o'clock p. m. some 18 miles outside of Cape Henry. At that time the Antilla was in tow of the Onandago, and had the naval tug Sonomo alongside, and the Pacifique loose from her astern, at anchor. The Albatross went to the Antilla, and the captain of the Onandago had a conversation with the master of the Antilla, and told him that the Albatross was the tug he had sent out in response to his call for assistance. The captain of the Antilla says that he re-

fused the services of the Albatross, as not needed, he having called for a revenue cutter and naval tug, and not an ordinary tug for hire, and finally told the captain of the Onandago that he would leave the matter of the employment of the Albatross to him. The Albatross then went up to the Antilla, and transferred the officers and remainder of the crew of the Onandago to that ship, and the Onandago started towing again; the Sonomo having in the meantime left. While engaged in this towing service, the Onandago's hawser parted, and the tide and current brought her on the side of the Antilla. The Onandago told the Albatross to put a line on the Onandago, and pull her up ahead of the Antilla, which she did, and the Onandago and the Albatross towed the Antilla in tandem into Lynnhaven Inlet.

Up to this period of time, and until the arrival of the tow at Lynnhaven Inlet about 7 o'clock on Monday night, the Albatross had had no occasion to fight fire on the Antilla; the same having been gotten under control by the Onandago and the Sonomo before the arrival of the Albatross. Upon reaching Lynnhaven Inlet, however, the fire broke out again, when the Albatross ran two lines of fire hose, 2½-inch and 1½-inch, respectively, on the Antilla, and pumped water until midnight or early.morning, when the fire was subdued; the Onandago also assisting in this service. The master of the Antilla, on Tuesday morning, the weather continuing very rough, asked the master of the Albatross to proceed to Norfolk to get his agent, Mr. O'Brien, which was done. The weather having moderated on Tuesday afternoon, the Albatross passed a line to the Onandago, which passed a line to the Antilla. The Merritt & Chapman tug Resolute having in the meantime appeared, she was engaged by the Antilla to assist, and fastened a line to the stern of the Antilla, so she could act as a rudder for her; and in that order the cutter, tugs, and tow proceeded into Hampton Roads, and when near Sewell's Point, on account of her condition, the Antilla was beached. After arriving at Sewell's Point, the fire again broke out on the Antilla, and the Albatross again put her hose on board, and the Resolute also, and again subdued it. About midnight the Albatross went to Norfolk. On the next day the Albatross was again ordered to the Antilla, for the purpose of putting her further up on the flats, which was done, and, the fire having been gotten under control, the service was completed.

The Antilla was a large vessel, 358 feet long, 45 feet beam, 16.3 deep, 3,562 tons gross, engaged in trade between New York, Cuban and Mexican ports, and with her cargo was valued at more than $1,000,000, and the ship in its damaged condition was valued at $585,000. The Pacifique was a very much smaller vessel. The Albatross was an ocean-going tug, 286 tons gross, 194 feet long, 127 feet keel, 26 feet beam, 13.8 feet deep, and draft 15 feet, with horse power of 750 tons, comparatively new, in first-class condition, equipped with improved fire-fighting appliances, and had been selected to go to the aid of the burning ship because of her special fitness for the work required. She was worth more than $50,000, and at the time was earning $125 per day, and her owners, by reason of the interruption to its business, sustained loss of some $2,100.

The facts stated clearly entitle the libelant to assert a claim for salvage, which is not disputed by the respondent; and the sole question to be determined is: What will be a proper award? There is no dispute that the services were rendered, nor is there any material controversy over the existence of the elements ordinarily entering into making a proper award for salvage, such as timely and successful service, large values, some danger, and the loss of valuable time from other engagements by the libelant. It is true the Antilla's master in his testimony sought to discredit the libelant's claim, and minimize what was done, with a view of showing that the services were of little value, and voluntarily performed without solicitation.

This view of the case is negatived by the entire testimony. Indeed, the court was not favorably impressed with the conduct and attitude of the Antilla's master in this respect, as it was quite apparent that he was more than willing to accept the gratuitous assistance of the government in saving his ship; and although the revenue cutter and naval tug, the Sonomo, had rendered the greatest service in bringing his burning vessel in more than 100 miles, he was disinclined to accept outside service that would cost money, although the revenue cutter had acted in his behalf in employing the Albatross, with a view of securing the necessary aid, to prevent, and which largely prevented, what otherwise would have been an enormous loss, and he seemed utterly lacking in appreciation of what had been done for him when in extreme peril especially by the libelant, who at much inconvenience and loss to his owner had promptly responded to his calls for help.

After responding to the call of the revenue cutter, which had been summoned at the instance of the burning ship as aforesaid, at inconvenience and great sacrifice to the tug's business, which consisted of towing loaded barges of coal from the port of Norfolk to New England ports, then ready and waiting to be transported, the tug spent three days and nights in active, laborious work in the effort to render the Antilla every possible service, in assisting in bringing in the burning ship some 18 miles out on the high seas into safe harbor, and twice extinguishing, or materially aiding in extinguishing, a raging fire on the ship, and promptly, intelligently, and efficiently worked night and day in the effort to do so.

Having regard to the urgency of the service, the large values involved, the loss of time to the tug in the execution of the employment in which it was engaged, the success attained in the enterprise, and the promptness with which the service was rendered, the court believes that an award of $9,000 should be made against the Antilla, with costs.

Regarding the claim asserted against the Pacifique, the court does not think that the libelant is entitled to any award, save reasonable towage service in going down, after the Antilla had been brought into harbor, and towing the Pacifique in, for which the sum of $100 is allowed, without costs.

A decree in accordance with the foregoing will be entered on presentation.